UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
FILED
SEP 0 7 2006
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 05-271-GWU

ROGER BOWLING,             PLAINTIFF,

VS.          **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,             DEFENDANT.

## INTRODUCTION

The plaintiff appeals an administrative decision to terminating Child's Supplemental Security Income (SSI) originally awarded effective September 1, 1995. The case is currently before the Court on cross-motions for summary judgment.

## TERMINATION OF CHILD'S BENEFITS

A new regulation sets out the steps for terminating childhood disability benefits. That section provides:

> (a) *Evaluation of continuing disability, in general.* There is a statutory requirement that, if you are eligible for disability benefits as a disabled child, your continued eligibility for such benefits must be reviewed periodically. . . .

1

> (1) . . . We will determine whether there has been medical improvement[1] in the impairment(s) you had at the time of our most recent favorable determination or decision. . . . If there has been no medical improvement, we will find that your disability continues, unless one of the exceptions to medical improvement described in paragraph (e) or (f) of this section applies.[2]

20 C.F.R. Section 416.994a(a), (a)(1).

---

[1] "Medical improvement" is any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable decision that you were disabled or continued to be disabled . . . . [W]e will disregard minor changes in your signs, symptoms, and laboratory findings that obviously do not represent medical improvement and could not result in a finding that your disability has ended. A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs, or laboratory findings associated with your impairment(s). 20 C.F.R. Section 416.994a(c).. . .For children, our definitions of the terms *symptoms, signs* and *laboratory findings* may include any abnormalities of physical and mental functioning that we used in making our most recent favorable decision [,]. . .the latest final determination or decision involving a consideration of the medical evidence and whether you were disabled or continued to be disabled. 20 C.F.R. Section 416.994a(c)(1), (2).

[2] The first set of exceptions to the need for medical improvement, contained in subsection(e), include situations where: (1) substantial evidence shows that, based on new or improved diagnostic techniques or evaluations, a claimant's impairment(s) is not as disabling as it was considered to be at the time of the most recent favorable decision. . . In order to be used under this exception, however, the new or improved techniques must have become generally available after the date of the agency's most recent favorable decision. . . .(2) . . .substantial evidence shows on its face that the determination or decision in question should not have been made (e.g., the evidence in a claimant's file, such as pulmonary function study values, was misread, or an adjudicative standard, such as a listing in appendix 1 of subpart P of part 404 of this chapter, was misapplied). . .(3) when, at the time of the prior evaluation, required and material evidence of the severity of your impairment(s) was missing, and the evidence later becomes available upon review, and substantial evidence demonstrates that, had such evidence been present at the time of the prior determination or decision, disability would not have been found. . .(4) substantial evidence that relates to the prior determination or decision refutes the conclusions that were based upon the prior evidence at the time of that determination or decision (e.g., a tumor thought to be malignant was later shown to have actually been benign); substantial evidence must show that, had the new evidence (which relates to the prior determination or decision) been considered at the time of the prior determination or decision, the claim would not have been allowed or continued. 20 C.F.R. Section 416.994a(e).
     The second group of exceptions to medical improvement, contained in subsection (f), include situations where (1) a prior determination or decision was fraudulently obtained. . . (2) the claimant failed to cooperate with the agency, as when the agency requested medical or other evidence or to required the claimant go for a physical or mental examination by a certain date, and there was no good cause for the claimant's failure to comply, (3) the agency was unable to locate a claimant (4) . . . If treatment has been prescribed for the claimant which would be expected to improve his/her impairment(s) so that it no longer results in marked and severe functional limitations, the claimant must follow that treatment in order to be paid benefits or show good cause for failing to follow it . . .20 C.F.R. 416.994a(f).

2

Once medical improvement has been established, <u>and</u> a finding has been made that none of the medical improvement exceptions apply, other considerations come into play before a child's benefits can be terminated. The agency will the consider:

> (1) . . . we will consider whether the impairment(s) that we considered at the time of our most recent favorable determination or decision still meets or equals the severity of the listed impairment it met or equaled at that time. In making this decision, we will consider the current severity of the impairment(s) present and documented at the time of our most recent favorable determination or decision, and the same listing section used to make that determination or decision as it was written at that time, even if it has since been revised or removed from the Listing of Impairments. . . .If that impairment(s) still meets or equals the severity of that listed impairment as it was written at that time, we will find that you are still disabled . . . .
>
> (3) . . . If . . .that impairment(s) no longer meets or equals the severity of the listed impairment that it met or equaled at that time, we will consider whether you are disabled under the rules in §§416.924(c) and (d). In determining whether you are currently disabled, we will consider all impairments you now have, including any you did not have at the time of our most recent favorable determination or decision, or that we did not consider at that time. The steps in determining current disability are summarized as follows:
>
>> (i) *Do you have a severe impairment or combination of impairment?* If there has been medical improvement in your impairment(s), or if one of the first group of exceptions applies, we will determine whether your current impairment(s) is severe, as defined in §416.924(c). If your impairment)s is not severe, we will find that your disability has ended. If your impairment)s is severe, we will then consider whether it meets or medically equals the severity of a listed impairment.
>
>> (ii) *Does your impairment(s) meet or medically equal the severity of any impairment listed in appendix 1 or subpart P of part 404 of this chapter?* If your current impairment(s) meets or medically equals the severity of any listed impairment, as described in §§416.925 and 416.926, we will find that your disability continues. If not, we will consider whether it functionally equals the listings.

3

> (iii) *Does your impairment(s) functionally equal the listings?* If your current impairment(s) functionally equals the listings, as described in §416.926a, we will find that your disability continues. If not, we will find that your disability has ended.

20 C.F.R. 416.994a(b).

## DISCUSSION

Bowling, a 15 year-old boy, was originally found eligible for Child's SSI as of September 1, 1995. (Tr. 13). In 1999, the claim was re-evaluated and the boy was again found to be disabled because his "severe" impairments of borderline intelligence and asthma were found to "functionally equal" the requirements of Section 112.02B of the Listing of Impairments. (Tr. 13). The plaintiff's condition was again reviewed by the agency in 2002. His disability was found to have ceased as of April 1, 2002. (Tr. 13). The claimant pursued administrative remedies.

In a decision dated January 25, 2005, an Administrative Law Judge (ALJ) determined that Bowling's disability had ceased as of April 1, 2002. (Tr. 20). The ALJ noted that the plaintiff's borderline intelligence and asthma remained "severe" impairments, but that "medical improvement" had occurred since the date that the claimant was last found disabled. (Tr. 20). As a result of this improvement, his condition no longer "functionally equaled" the criteria of any Listing. (Tr. 20). Thus, Bowling could no longer be considered totally disabled. (Tr. 20-21). This denial decision became final for the administration when the Appeals Council found no reason for review on April 1, 2005. (Tr. 3). Mary Bowling, the plaintiff's mother, then filed suit in federal district court on behalf of her son.

4

After review of the evidence presented, the undersigned concludes that the administrative decision is supported by substantial evidence. Therefore, the Court must grant the defendant's summary judgment motion and deny that of the plaintiff.

As previously noted, at the time of Bowling's April, 1999 finding of continuing disability, his condition was found to be "functionally equal" to Section 112.02B of the Listing of Impairments. In order to functionally equal a Listing, a claimant must prove that he has a "marked" limitation in two of six broad areas of functioning known as "domains" or an "extreme" limitation in one domain.[3] 20 C.F.R. Section 416.926a(d). The six domains are (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for himself, and (6) health and physical well-being. 20 C.F.R. Section 416.926a(b)(1).

Psychologist Lea Perritt, a medical reviewer, opined in February of 1999 that this Listing was "functionally equaled" because the plaintiff had "marked" limitations in two areas--social functioning and concentration, persistence and pace.[4] (Tr. 531). This opinion differs sharply from that of the current medical reviewers, Edward

---

[3] A "Marked" limitation is defined as an impairment which "seriously interferes with your ability to independently initiate, sustain or complete activities." 20 C.F.R. Section 416.926a(e)(2). An "Extreme" limitation is defined as an impairment which interferes "very seriously with your ability to independently initiate, sustain or complete activities." 20 C.F.R. Section 416.926a(e)(3).

[4] The domain names were somewhat changed as a result of a 2000 revision in the administrative regulations.

Stodola and Ann Demaree, neither of whom found a "marked" level of impairment. (Tr. 535, 537, 543).

In the present action, Psychologist Edward Stodola opined that Bowling had "less than marked" restriction in such domains as acquiring and using information, attending and completing tasks, as well as in health and physical well being.[5] (Tr. 535, 537). The claimant was noted to have "no limitation" in interacting and relating with others, moving about and manipulating objects and caring for himself. (Tr. 535, 537). This opinion clearly does not indicate that a Listing is "functionally equalled."

Psychologist Ann Demaree also reviewed the record and opined that Bowling had a "less than marked" restriction in in acquiring and using information. (Tr. 543). The plaintiff was said to have "no limitation" in such areas as attending and completing tasks, interacting and relating with others, moving about and manipulating others, and caring for himself. (Tr. 541, 543). The claimant's ability in the domain of health and physical well-being was checked as rated between "less than marked" and "marked." (Tr. 541). This opinion would also not be sufficient to "functionally equal" a Listing.

Stodola's and Demaree's opinions are consistent with the findings indicated in the report of Blaine Pinaire, an examining consultant. Pinaire evaluated Bowling in March of 2002 and diagnosed borderline intelligence. (Tr. 195). The plaintiff's Global Assessment of Functioning (GAF) was rated at 58. (Tr. 195). Such a GAF indicates the existence of only "moderate" psychological symptoms according to the

---

[5]The plaintiff's representative mistakenly states that Stodola rated one domain as "extreme" and two others as "marked."

6

American Psychiatric Association's <u>Diagnostic and Statistical Manual of Mental Disorders</u> (4th Ed.-Revised, 1994). This GAF does not suggest the existence of either the "marked" or the "extreme" limitations needed to "functionally equal" a Listing. To the examiner the claimant's mother reported no major behavioral problems at home. (Tr. 191). He was noted to be able to vacuum and pick-up after himself. (Tr. 192). He played basketball and had been on a school team. (Tr. 192). He rode the bus to and from school and enjoyed video games. (Tr. 192). The examiner noted that the plaintiff's vocabulary was adequate. (Tr. 192). These findings also do not suggest that Listing is "functionally equaled."

The current record also included a report from Sheila Gregory, Bowling's teacher, dated from February of 2002. Gregory noted that the young man had good social skills, getting along well with teachers and other students and actually interacting as well or better with others than most students his age. (Tr. 116-117). He was said to have no problems completing tasks and had the ability to concentrate and pay attention to complete work on his own. (Tr. 117). This contrasted sharply with the statement of Rita Bishop, Bowling's teacher who completed a questionnaire concerning the student in February of 1999; Bishop had indicated that the boy frequently got into fights with others, did not pay attention and hardly ever completed tasks on his own. (Tr. 120-121).

With regard to Bowling's asthma problem, his mother told Dr. Leonor Pagtakhan-So in May of 2002 that his breathing was better. (Tr. 419). Pulmonary function studies in September of 2003 revealed only mild restriction. (Tr. 574). The only limitation indicated by the plaintiff's treating sources was a need to avoid

7

exposure to cigarette smoking.[6] (Tr. 420, 574, 583). Thus, this condition would not appear to be of sufficient severity to help the claimant meet the disability requirements. Therefore, substantial evidence supports the ALJ's finding of medical improvement.

Bowling was injured in an ATV accident in June of 2004. The plaintiff suffered a closed head injury as well as an acetabular fracture and left hip displacement. (Tr. 749). He was treated at the University of Kentucky Chandler Medical Center. A CT Scan did not show any intracranial pathology. (Tr. 749). He was placed on non-weight-bearing status for six weeks. (Tr. 756). No long-term restrictions were identified by the treating staff. (Tr. 729-734, 746-757). At the December, 2004 hearing, the ALJ noted that the claimant was able to walk into the hearing room. (Tr. 763). The young man indicated that his leg had healed although he still experienced some pain when the weather became cold. (Tr. 763-764). Clearly, these new injuries from the current time period do not reach a disabling level. Bowling's representative argues that his mental disorder has carried over into adulthood and that his condition currently meets the requirements of Section 12.02(B) concerning organic brain disorders. However, the record indicates that the plaintiff's birthday is September 15, 1989. (Tr. 763). Thus, he was only 15 years-old at the time of the ALJ's January 25, 2005 denial decision and, so, was not an adult. Therefore, this Listing has no application in the current case.

---

[6]Despite this limitation, the claimant's father continued to smoke when the boy visited him on weekends. (Tr. 765).

8

The undersigned concludes that the administrative decision should be affirmed. Therefore, the Court must grant the defendant's summary judgment and deny that of the plaintiff. A separate judgment and order will be entered simultaneously consistent with this opinion.

This the ___7___ day of September, 2006.

*[signature]*
G. WIX UNTHANK
SENIOR JUDGE